PATTERSON *v*. ROGERS.

Opinion delivered April 11, 1921.

1. CONTRACTS—RESTRAINT OF TRADE.—Contracts in partial restraint of trade will be upheld unless they result in the creation of a monopoly.

2. GOOD WILL—CONTRACT NOT TO ENGAGE IN BUSINESS.—An agreement by the seller of a business not to engage therein, in order to be enforced, must be definite and certain as to the extent to which trade or business is restrained, so that it may appear to what extent the rights of the public have been infringed.

3. GOOD WILL—SALE OF BUSINESS.—One who sells his business with its good will must in good faith do nothing which directly tends to deprive his purchaser of the benefits and advantages of the purchase.

4. GOOD WILL—SALE OF BUSINESS—EFFECT.—An agreement not to engage in the same business is not to be implied from mere sale of the business with its good will or from loose expressions of the seller during the negotiations for the sale indicating a purpose not to re-engage in the business he is selling.

5. GOOD WILL—SALE—RIGHT TO RE-ENTER BUSINESS.—Where the purchasers of a milling business saw fit to rely on general expressions of the seller as to his intention not to re-engage in the business, without providing therefor in the written contract, they will be held to have taken the chance that the seller might later change his plans, in which event he would not be precluded from re-entering business.

Appeal from Benton Chancery Court; *B. F. McMahan,* Chancellor; affirmed.

*Rice & Rice* and *J. W. Nance,* for appellants.

There was no written contract regarding the sale of the property, good will and established business, and the court erred in its findings. Nor was there any oral agreement on these points. Appellants certainly understood that Rogers was selling them, not only the property, but all that was inseparably connected with it—the good will and the long-established business in the community. 9 Cyc. 246. There was a partial failure of consideration, and the chancellor erred in dismissing appellant's cross-bill. 62 Ark. 101; 91 *Id.* 367; 95 *Id.* 387. The contract was reasonable and enforceable and not void as against public policy. 112 Ark. 126; 9 Cyc. 738; 23 Ark. 196; 18 A. & E. Ann. Cases 433.

*Duty & Duty* and *McGill & McGill,* for appellee.

1. As the good will existed only in connection with the business, it is presumed it passed with the other assets sold, unless expressly reserved. 12 R. C. L. 985. While contracts in general restraint of trade are invalid as against public policy, contracts ancillary to the sale of a business are valid and enforceable. 127 Ark. 590; 5 *Id.* 318; 6 R. C. L. 786; 112 Ark. 126. The question whether appellant had the right to go back in the milling business in Rogers is involved. 12 R. C. L. 990; 60 Penn. St. 458; 100 A. D. 584. The good will passed with the other assets, unless expressly reserved. 12 R. C. L. 985. While contracts in general restraint of trade are invalid, yet contracts that are ancillary to the sale of a business and the good will thereof, with proper restrictions as to time and place, are valid and enforceable. 127 Ark. 590; 112 *Id.* 126; 6 R. C. L. 786. While the rule is, in some jurisdictions, that one who sells the good will of his business is precluded from setting up a competing business, the general rule is that, in the absence of an express covenant, there is nothing to prevent the seller from re-establishing in the same business, provided he does nothing to injure the good disposition of the public toward the old place of business, or impair any of the advantages which the

purchaser has acquired by the purchase of the good will of the old customers in the vicinity. 12 R. C. L. 988. See, also, note to Ann. Cases 1914 B 587; 29 *Id.* 582 and note; 118 Md. 29.

2. The contention that the mill property was sold for $7,000 and the good will for $3,000 is not supported by the evidence.

3. The measure of damages is the injury which the buyer has sustained. There can be no recovery, in the absence of evidence showing that the good will of the business was injured by defendant's wrongful act. 12 R. C. L. 996-7; 20 Cyc. 1282-3; 131 La. 204; Ann. Cases 1914 A and note; 92 S. W. 1104; 108 Ala. 451; 42 Ohio St. 474; 54 Am. St. 177; 112 Ark. 126.

There was no testimony that any actual damages had been suffered by appellants.

4. The testimony fails to show that Rogers was inspired by ill-will or intended to breach the contract. The evidence shows that appellants made a splendid trade, and there is no error in the findings and decree.

SMITH, J. W. J. Rogers operated a general milling business in the city of Rogers under the name of the Rogers Milling Company. He sold the property, good will and business to R. B. Patterson and three associates, who are the appellants here. The sale was made July 18, 1918, for the consideration of $10,500, of which sum $2,500 was cash in hand paid. The balance was evidenced by a note due one year after date, bearing eight per cent. interest. A payment of $1,000 was made on the note on January 2, 1919, and on August 1, 1919, an additional payment of $5,000 was made. This suit was brought at law to collect the balance, but on motion was transferred to equity.

The execution of the note was admitted, but, by way of defense, it was alleged that Rogers was a successful and experienced miller, and his plant had an established good will and business, and a part of the consideration for the note sued on was an oral agreement by Rogers

not to build or operate, or to become interested in the building or operation of, another mill in the city of Rogers, and that the good will of the business and the agreement on the part of Rogers not to re-enter the milling business were worth $3,500; that Rogers, in violation of his agreement, had erected another mill and was engaged in operating the same and transacting a general milling business, to the injury of the defendants in the sum of $3,500; and there was a prayer for judgment in accordance with these allegations.

Rogers testified in his own behalf, and denied that there had been any agreement on his part not to re-enter the milling business in Rogers. He stated that he went to Colorado for his health, and after a year's absence returned and re-entered the milling business.

John Putnam was one of the four who formed the copartnership for the purchase of the mill and who signed the note sued on. Putnam conducted the negotiations leading up to the purchase, and was the principal witness for the defendants. He stated he understood the mill had cost about $7,000, and he told Rogers $10,500 was too much for the property; but Rogers insisted that the price was reasonable, as the mill was running in good shape and had a good business. Putnam further testified that Rogers stated his physician had advised him to go West for his health, and that he was forever through with public business if he could sell his mill. This witness repeated these representations to his associates, all of whom testified that they were induced to buy by reason of the fact that they were getting the mill with its good will and business, and that they proceeded on the assumption that they would have no competition in business, at least none from Rogers.

This court has in more than one case upheld contracts in partial restraint of trade; but in doing so we have recognized that the contract is of such character that the rights of the public may be involved; and where the contract results in the creation of a monopoly, it is

void as contrary to public policy. *Wakenight* v. *Spear &
Rogers,* 147 Ark. 342; *Shapard* v. *Lesser,* 127 Ark. 590.

The courts, therefore, require that such contracts be
definite and certain as to the extent to which trade or
business is restrained, so that it may appear to what ex-
tent the rights of the public have been infringed before
lending aid to their enforcement.

The Supreme Court of Pennsylvania in *Hall's Ap-
peal,* 60 Pa. St. 458, a case in which one undertaker had
bought the business of another, including the good will
of the business, said: "As the alleged agreement is in
restraint of trade, its existence should be established by
clear and satisfactory evidence in order to justify the
court in restraining its breach by injunction. There
should be no doubt or uncertainty in regard to its terms,
or the consideration upon which it was founded."

One who sells his business with its good will must in
good faith do nothing which directly tends to deprive
his purchaser of the benefits and advantages of the pur-
chase. But it is said in the note to the case of *Brown*
v. *Benzinger,* 84 Atl. 79, A. & E. Ann. Cas. 1914 B 582,
that the rule is well settled that the vendor of the good
will of a business may, in the absence of a restrictive
agreement, engage in a competing business. Cases are
there collected supporting the text of the note.

The reasons generally assigned for the rule are that
it is quite usual for one to sell his business, while agree-
ments not to engage in the same business are exceptional;
and, as such agreements result in at least a partial re-
straint of trade, they are not to be implied from the mere
sale of the business with its good will or from loose ex-
pressions of the seller during the negotiations for the sale
indicating a purpose not to re-engage in the business he
is selling. The rule, as stated in 12 R. C. L. 988, is as
follows: "But the more generally accepted doctrine is
that, in the absence of an express covenant, there is noth-
ing to prevent him from re-establishing himself in the
same business, provided he does nothing to injure the good
disposition of the public toward the old place of business,

or to impair any of the advantages which the purchaser has properly acquired by the purchase of the good will of the old customers in the same vicinity.''

Appellee was not asked to agree not to re-enter the milling business in Rogers as a condition upon which the purchase would be made; nor is it contended that he agreed not to go into business again. There is no allegation or proof of fraud. After selling the mill Rogers did go West, as he had said he intended to do, where he remained for about a year. The purchasers saw fit to rely on general expressions by the vendor as to his future intentions, without incorporating those statements into the contract of sale, and they must therefore be held to have taken the chance that the seller might later change his plans, in which event he would not be precluded from re-entering business, as he did not so expressly agree.

It follows that, while Rogers has no right to do anything which would impair the value of the business, and the good will thereof, sold by him to appellants, he did not bind himself not to re-enter the milling business, and his act in doing so can not, therefore, be the subject-matter of an action for damages, and the decree of the court below is therefore affirmed.