### BABER v. BAESSELL et al.
### No. 6621.

United States Court of Appeals for the District of Columbia.

Decided Aug. 17, 1936.

Frank B. Hoffman, of Washington, D. C., for plaintiff in error.

Mark P. Friedlander, Robert I. Silverman, Alvin L. Newmyer, and David G. Bress, all of Washington, D. C., for defendants in error.

Before MARTIN, Chief Justice, and VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This case arises upon a writ of error to the Municipal Court of the District of Columbia. The suit was an action brought by the plaintiff in error, plaintiff below (hereinafter called plaintiff) for alleged breach of a contract to build a dwelling house. The defendants in error, defendants below (hereinafter called defendants) themselves sought an affirmative judgment against the plaintiff. The case was tried to a court and jury. There was a verdict in favor of the defendants in the sum of $550. The questions in the case involve the propriety of the trial court's rulings upon motions to strike testimony.

The declaration alleged that: On July 24, 1933, "the plaintiff and the defendants entered into a written contract, whereby the defendants agreed to erect, build, set up, finish, and complete for use in the most substantial and workmanlike manner, a certain building . . . in . . . Alex-andria, Virginia, and to install therein, among other things, an electric refrigerator, all according to plans and specifications attached to and forming a part of said contract, for the sum of Twenty-two Hundred and Sixty ($2260.00) Dollars . . .," and wherein the defendants agreed to assure the plaintiff in writing against all claims or liens for work and material. The plaintiff duly performed the contract on his part. The defendants entered upon the performance of the work and constructed the building, but in a defective manner "for that the . . . roof [of the dwelling] did not have the correct or proper pitch to provide for necessary and adequate drainage, and for that the said roof leaked . . . .," and for that the defendants "failed and refused to install an electric refrigerator in said building in accordance with the plans and specifications thereof . . . .," and for that the defendants incurred certain debts and obligations for labor and materials in connection with the construction of the building, which they failed to pay and in respect of which they failed to furnish the plaintiff with a written release of liens. As a result of the breaches aforesaid, the plaintiff was obliged to pay $570 in respect of the roof, $125 in respect of the refrigerator, and $456 in respect of the debts and obligations. The plaintiff prayed judgment for $1,000.

The defendants filed three pleas. In each of these pleas they admitted the execution of the contract declared on, but in the first they asserted that it had later been abrogated by the parties, in the second that it had been modified as to price, and in the third, which was a plea for recoupment, that: After the execution of the agreement the plaintiff breached the same in that for a long period of time he delayed the defendants in commencing the work. On account of this delay and the rise during the same of the cost of materials, the defendants refused to perform the contract when requested, and the plaintiff then agreed to pay them the actual cost of building the premises. In accordance with this agreement the defendants faithfully, carefully and skillfully caused the building to be constructed and completed, and performed labor and rendered services, as contractors on the job. And the plaintiff, in accordance with this further agreement "did pay the actual bills for the completion of said premises in accordance with the contract," except the claims of the defendants for services which [as set forth in a bill of

particulars to the third plea] were of the reasonable value of $1,000. For this sum the defendants prayed judgment against the plaintiff.

At the trial the plaintiff introduced evidence to the following effect: On July 24, 1933, the parties entered into the contract declared on, providing for completion of the building according to plans and specifications. The specifications, among other things, provided: "Roof to be canvas on top of sheathing laid and constructed in accordance with U. S. Navy specifications for ship decks"; and also, "One four and one-half Cu. ft. Electric Refrigerator, Kelvinator, Frigidaire, Majestic or equal." The contract had never been abrogated, but the defendants informed the plaintiff that they were unable to get credit and were thus having difficulty in getting materials; whereupon the plaintiff agreed to pay all bills for the construction of the house. The plaintiff did pay such bills to the extent of $345.87 in excess of the contract price of $2260. Any delay of the defendants in commencing the work was due to the necessity of the plaintiff's arranging with the City of Alexandria to extend water into the lot, and to the inability of the defendants to get credit to purchase materials. The defendants turned the house over to the plaintiff as complete in October, 1933, but had failed to install an electric refrigerator and had failed to correct the roof, which, in September, 1933, had leaked. The defendants failed and refused either to install the refrigerator or to correct the leaky roof. The leaks were due to puckering of the canvas, and to the pitch not being steep enough to carry off the water. It was necessary to build a new roof, of the gable type, over the old one. This the plaintiff did, at a cost less than would have been incurred in replacing the old roof with a new one of the same type.

With reference to the refrigerator, the evidence for the plaintiff was in substance that: The plaintiff "had gotten prices from dealers handling the type of refrigerators mentioned in the specifications and the cheapest he could have one installed for was $125.00."

Upon the foregoing evidence the plaintiff rested his case. Thereupon the defendants moved to strike out all of the testimony relating to the new roof, and all of the testimony in reference to the cost of the electric refrigerator. Both of these motions were granted. The errors assigned are upon these rulings.

We think both rulings were correct. Concerning the granting of the motion to strike out the testimony relating to the roof: The evidence for the plaintiff was introduced under a wrong theory of law as to the measure of damages. It is settled in this jurisdiction that the measure of damages for failure to complete a building according to contract is the difference between what the building is worth when completed and what it would have been worth had it been completed according to the contract. Mercantile Trust Co. v. Hensey, 27 App.D.C. 210. Plaintiff concedes in his brief that such is the rule in this jurisdiction, but he asserts that "it must be applied with reason and fairness," and that in the instant case it would be unfair to apply it because of the fact, shown by the evidence, that it cost less to construct the gable roof than it would have to rebuild the original one. Conceding this fact, the plaintiff's conclusion as to the unfairness of applying the general rule does not follow, for the reason that no evidence was introduced as to the difference between what the house was worth when completed and what it would have been worth had it been completed according to the contract and, therefore, there was nothing from which the judge could conclude that it would be unfair to apply the general rule, that is, there was nothing from which the judge could conclude that the difference between the value of the house as built, and its value if built according to the contract, would have been more than the cost of constructing the gable roof. For a further reason we think that the testimony concerning the roof was properly stricken. The plaintiff's case was based upon a declaration asserting a contract to build according to plans and specifications, but not asserting that such plans and specifications were furnished by the defendants under an agreement of sufficiency for a waterproof roof, and not asserting any such agreement on the part of the defendants, no matter by whom the plans and specifications were furnished. There was no evidence that the roof as built by the defendants was not built strictly in accordance with the plans and specifications, that is to say, there was no evidence of a breach of the contract declared on, so far as the roof was concerned. There was evidence of unsuitable materials and design, but none that

the materials and design were other than called for by the plans and specifications. Therefore, there was no foundation for retaining in the record the testimony concerning damages in respect of the roof. There is no liability for defects due to faulty plans or specifications if the builder has been hired to follow them and has done so, unless he has in some manner warranted them. United States v. Spearin, 248 U.S. 132, 39 S.Ct. 59, 63 L.Ed. 166; Weld v. Goldenberg (C.C.A.) 65 F. 466; MacKnight Flintic Stone Co. v. Mayor, etc., of City of New York, 160 N.Y. 72, 54 N.E. 661; Filbert v. Philadelphia, 181 Pa. 530, 37 A. 545. It is to be commented further that as a part of the defendants' case one of the defendants testified "that the house was built according to the plans and specifications . . . ." There was no rebuttal testimony.

■■ Concerning the granting of the motion to strike the testimony relating to the cost of an electric refrigerator: The testimony was hearsay. The plaintiff's knowledge was based on a belief in the truth of the dealer's assertions. Under such circumstances it is incompetent. 1 Wigmore on Evidence, 2d Ed. § 719. But aside from this, the error, if any, was harmless. The defendants' third plea, for recoupment, charged that the contract of July 24, 1933, had been abrogated and a new agreement substituted whereby the defendants were to build as originally required, but upon new terms whereunder the plaintiff was to pay the bills himself plus reasonable compensation for the defendants' services as contractors. The plaintiff, as above pointed out, introduced evidence to the effect that the contract had not been abrogated. The evidence for the defendants on the contrary was specifically that it had:

"that by the time defendant was ready to commence actual construction work, prices of materials had advanced due to the N. R. A. Code; that he explained this to the plaintiff and told him they could not do the work for the contract price of $2,260.00; and could not go ahead under said written contract; that the plaintiff told him, alright, to go ahead and do the work and that he would pay all the bills as they went along; and that he would take care of the defendants when the house was finished; that plaintiff told him to go ahead and forget the contract as it was no longer in effect; that the house was built according to the plans and specifications; that all of the bills were made out in the name of the plaintiff . . . ."

The court submitted the case to the jury under instructions, not complained of, to the effect that if they believed from the evidence the plaintiff's theory of the case, that the written contract was in force, then their verdict should be for the plaintiff for the additional amount which he expended over and above the contract price. But the jury brought in a verdict for the defendants, in the amount of $550. This was in effect a finding of fact that the contract was ultimately as claimed by the defendants under the recoupment plea. Therefore it was the duty of the plaintiff to pay any bill for a refrigerator and evidence of cost thereof was immaterial.

In accordance with the above the judgment entered upon the verdict in the defendants' favor is

Affirmed.